IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| FRANCES LOUISE BRUMBACK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 10-0668-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**<u>ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION</u>**

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her disability application. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff is a 68-year-old female with a work history as a billing clerk, customer service clerk, administrative secretary, and insurance salesperson. She smoked for 30 years, but quit in 2002. Plaintiff has a medical history of atrial fibrillation (irregular heart rhythm), a pacemaker, coronary artery disease, and "99% diagonal stenoses treated medically in July 2002."[1] She filed an application for disability benefits and claimed she was unable to work due to "[h]eart problems/hypertension/[high blood pressure]/depression."

In response to Plaintiff's complaint of pain, Eric G. Sollars, MD, Plaintiff's primary physician, ordered an x-ray of her lumbar spine. The radiology report dated January 7, 2005, revealed mild degenerative changes throughout the lumbar spine without focal traumatic abnormalities. Although the report also indicated prominent facet hypertrophy

---

[1] "[S]tenosis" is "[a] stricture of any canal or orifice." *Stedman's Medical Dictionary*, p. 1832 (28th ed. 2006).

(enlargement of the facet joints) at L4-5 and L5-S1, Dr. Sollars apparently did not order any treatment for this condition.

In March 2005, Plaintiff reported to Dr. Sollars that she felt "really tired" and was "very [short of breath]" with slight exertion. However, there is no indication what treatment was ordered – if any – to address her complaints.

Improvement in Plaintiff's shortness of breath (dyspnea) was noted by Loren Berenbom, MD, Plaintiff's cardiologist, who wrote after an office visit on November 2, 2005, that Plaintiff's "[d]yspnea on exertion is much better now than last year." Although Dr. Berenbom noted Plaintiff had "occasional chest pain, some of which [was] exertional," he also noted Plaintiff "continue[d] to work full time." Dr. Berenbom concluded that "[i]n light of [Plaintiff's] known [coronary artery disease], cardiovascular risk factors, and occasional chest discomfort, we are going to go ahead with an adenosine stress thallium study.[2] If that looks good, I do not think I will need to see her back for about one year."

Thomas L. Rosamond, MD, performed the stress study. In his report's "<u>SUMMARY/OPINION</u>" section, Dr. Rosamond notes, "This study is low probability for significant jeopardized ischemic myocardium.[3] There is mild attenuation in the anterolateral wall, but a [sic] definitive reversible perfusion abnormalities are not apparent. Global left ventricular function is with normal limits. High risk indicators are otherwise not noted." Dr. Rosamond also compared Plaintiff's study with one from approximately 1 year earlier and found "the perfusion patterns appear to be similar, suggesting no significant change."

Plaintiff claims she was disabled effective December 15, 2005. When asked by the ALJ why she chose this date, Plaintiff responded her employer (a medical billing

---

[2] According to the American Heart Association, a thallium stress test "shows how well blood flows to the heart muscle."
http://www.americanheart.org/presenter.jhtml?identifier=4743

[3] Mayo Clinic states "[m]yocardial ischemia occurs when blood flow to your heart muscle is decreased by a partial or complete blockage of an artery that carries blood to your heart." http://www.mayoclinic.com/health/myocardial-ischemia/DS01179

company) closed in the area, she was 62 years old, and the people she worked for had been "very accommodating because they knew there were things [she] couldn't do." Plaintiff also indicated she would have continued working for the company had they not closed. Plaintiff sought other clerical employment while she drew unemployment compensation for a short time; she signed up to receive Social Security retirement benefits in January 2006.

In March 2006, Plaintiff returned to Dr. Sollars, who noted edema (swelling). From an office visit note dated June 12, 2006, "[b]one density" is noted as a chief complaint and Dr. Sollars' barely-legible handwriting appears to indicate an impression of osteoarthritis; however, bone scans were normal.

On June 22, 2006, Plaintiff complained to Dr. Sollars of a headache that had lasted for at least 3 weeks, making her feel nauseated. She reported pain starting at the back of her skull and shooting up. She also reported she had been feeling very tired and "SOA," (which appears to mean "swelling of ankles"). A CT scan revealed "[d]egenerative changes in the cervical spine" with "no acute process noted"; a CT scan of Plaintiff's head was normal.

Plaintiff saw David Cathcart, DO, for a consultative examination on July 27, 2006. Dr. Cathcart noted Plaintiff "does not feel like she has the stamina to work an eight-hour day but I do not see a medical explanation to explain that." Dr. Cathcart assessed Plaintiff's residual functional capacity (RFC) as consistent with the ability to do light work,[4] with some additional restrictions (*e.g.*, no "more than frequent bending and stooping"). In August 2006 a state agency medical consultant made findings similar to Dr. Cathcart's and concluded it was "reasonable for her to return to her past work as it is generally performed," and a state agency psychological consultant found nonsevere mental impairments.

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

3

Plaintiff returned to Dr. Berenbom in November 2006. Following his examination, Dr. Berenbom did not order a stress test, noting one would likely be conducted the following year. In his letter to Dr. Sollars, Dr. Berenbom wrote Plaintiff "has been sort of bored" since retiring and "got her insurance license and she is going to work part-time for her daughter's insurance agency." Plaintiff later testified she worked less than 20 hours per month selling health and life insurance, mostly by telephone. Dr. Berenbom also wrote Plaintiff "complain[ed] of easy diaphoresis with limited activity" which was "unchanged over the course of several years." Dr. Berenbom continued, "Unfortunately she is sedentary and she has gained 13 pounds in the past year. Her [body mass index (BMI)] is up to 44."[5] He talked with Plaintiff "at length about diet, exercise, and weight loss."

Plaintiff saw Dr. Sollars in January 2007, reporting sinus problems and excessive perspiration, but did not see him or Dr. Berenbom again until February 2008. Plaintiff's visit to Dr. Sollars was a regular checkup with reports again of sinus problems. Her visit to Dr. Berenbom included a stress study, which revealed "no significant interval change" when compared with the November 2005 study. During her visit, she reported she was "feeling well" and "denie[d] . . . activity intolerance." Dr. Berenbom noted Plaintiff "continues to be sedentary. Her BMI is still almost 44." He also noted "[w]e talked at length about diet, exercise, and weight loss once again."

Plaintiff's weight remained essentially unchanged when she saw Dr. Sollars on June 6, 2008, complaining of low back pain with aching legs and pain in her right toe, along with pain radiating to her hips. Dr. Sollars' impression is illegible. The next week, Dr. Sollars performed lower back injections, but there is no (legible) indication what was injected. Dr. Sollars did add Tylenol 3 to Plaintiff's prescriptions.

The ALJ conducted a hearing on October 8, 2008. Plaintiff testified some of her daily activities were limited by fatigue, shortness of breath, and/or pain: she could do housecleaning with her husband, but could not vacuum due to pain; she could walk up

---

[5] A BMI over 40 indicates extreme obesity. http://www.nhlbi.nih.gov/health/dci/Diseases/obe/obe_diagnosis.html. Plaintiff weighed 226 pounds.

4

her basement stairs, but it would take her a "minute or two"; she could slowly walk one city block, but she would experience a "heavy feeling" or "pressure feeling" in her chest and become short of breath; she could stand for 15 minutes, but it would cause "real[ly] bad" pressure in her lower back and right hip, with sharp pains in her hip; she could sit for 30 to 45 minutes, but swelling in her ankles would bother her; she could do dishes and clean up the kitchen after a meal, but would be in "a lot of pain" afterward.

But Plaintiff was not taking strong pain medication; the only prescription for pain she identified was Mobic, a nonsteroidal anti-inflammatory drug, which she said Dr. Sollars prescribed for her arthritis. And she was not so limited in other daily activities: she testified she could do laundry, cook, and make the bed. She also shops at Wal-Mart for up to 30 minutes at a time, although she leans on the cart while shopping and occasionally rests on a bench during a trip. Plaintiff testified she drove, but not very often. She also reported no problems with personal care.

In denying benefits, the ALJ determined Plaintiff could return to her prior work despite her severe impairments of status post pacemaker atrial fibrillation, chronic ischemic heart diseases, and obesity. The ALJ found Plaintiff's subjective complaints inconsistent with her activities of daily living and uncorroborated by the objective medical evidence, including the fact there were "no restrictions from the claimant's treating physicians."

Plaintiff filed an appeal with the Appeals Council on November 21, 2008, and 3 days later, Dr. Sollars completed a physical residual functional capacity questionnaire. Dr. Sollars listed Plaintiff's symptoms as "[b]ack pain radiating into legs with weakness of back and legs." Dr. Sollars stated Plaintiff's pain would constantly interfere with her attention and concentration and required medication, although he did not identify what the medication was. Dr. Sollars opined Plaintiff suffered other severe limitations, such as the inability to sit or stand 2 hours in an 8-hour workday. When asked to identify Plaintiff's clinical findings and objective signs, Dr. Sollars wrote, "Back pain, leg pain and weakness." When asked to describe Plaintiff's treatment and response to treatment, including side effects, Dr. Sollars simply wrote, "Medications."

The Appeals Council denied Plaintiff's request for review, writing, "[W]e

5

considered the reasons you disagree with the decision and [Dr. Sollars' report]. We found that this information does not provide a basis for changing the [ALJ's] decision." This action for judicial review followed.

## II. DISCUSSION

"[R]eview of [the Commissioner's] decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Smith v. Schweiker*, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Plaintiff first contends the Appeals Council failed to consider Dr. Sollars' opinion as required by 20 CFR. 404.970(b), but the Appeals Council *did* consider this evidence. Neither is Plaintiff correct Dr. Sollars' opinion should have been afforded controlling weight. A treating source's opinion is entitled to controlling weight only if is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 CFR § 404.1527(d)(2).

Dr. Sollars' opinion Plaintiff experienced debilitating back and leg pain/weakness is inconsistent with other substantial evidence in the record. Although medical imaging of Plaintiff's lumbar spine in January 2005 revealed "prominent facet hypertrophy," no treatment apparently was ordered, and Plaintiff did not seek treatment for back pain again until June 2008. *See Clark v. Shalala*, 28 F.3d 828, 831 (8th Cir. 1994) (holding lack of medical treatment was valid reason, among others, to discount subjective pain).

6

Dr. Cathcart's consultative examination revealed no physical abnormalities, and the state agency medical consultant concluded Plaintiff could return to her prior work. Before Dr. Sollars' report in November 2008, neither he nor anyone else had imposed any significant work restrictions on Plaintiff. Although Plaintiff received back injections in June 2008, neither Dr. Sollars nor the medical records give any indication whether these helped. And Plaintiff's pain medication – Mobic and Tylenol 3 – are not the sort of strong prescriptions one would expect a person with disabling pain to take. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (noting "lack of strong pain medication is inconsistent with subjective complaints of disabling pain" (citation omitted)). Dr. Sollars' opinion was not entitled to controlling weight.

Plaintiff counters that even if not entitled to controlling weight, Dr. Sollars' opinion was still entitled to the greatest weight and should have been adopted applying the factors listed in 20 CFR § 404.1527(d)(2). Although the factors of "[e]xamining relationship" and "[t]reatment relationship" weigh in favor of Dr. Sollars' opinion, the other factors – "[s]upportability," "[c]onsistency," and "[s]pecialization" – do not. Dr. Sollars did not support his opinion with *any* medical signs or laboratory findings, his opinion was inconsistent with substantial evidence in the record as a whole, and Dr. Sollars is not a specialist. Weighing the factors in § 404.1527(d)(2), the Commissioner did not err in refusing to adopt Dr. Sollars' opinion.

Plaintiff next argues the ALJ failed to consider how her obesity limited her ability to function as required by Social Security Ruling (SSR) 02-1p. When an ALJ identifies obesity as a medically determinable impairment (like the ALJ did here), SSR 02-1p requires the ALJ to "consider any functional limitations resulting from the obesity in the RFC assessment, in addition to any limitations resulting from any other physical or mental impairments [identified]." SSR 02-1p, at *7. In Plaintiff's case, the ALJ wrote that she considered Plaintiff's obesity and found that it "does not adversely affect pulmonary, cardiovascular, endocrine and musculoskeletal functioning, nor physical endurance or exertional capacity."

Plaintiff contends the ALJ failed to adequately explain or justify its finding. Plaintiff also characterizes the finding as "baffling" in light of the ALJ's determination

7

Plaintiff's obesity was a "severe" impairment (meaning it "it significantly limits [Plaintiff's] physical or mental ability to do basic work activities," SSR 02–1p). The Commissioner counters that the RFC includes postural limitations which "would account for Plaintiff's obesity." The Commissioner also highlights the ALJ's RFC relied on Dr. Cathcart's examination, which noted Plaintiff's height and weight.

Where an ALJ takes "notice of the claimant's obesity as an impairment (severe or otherwise)," it can be "reasonable to assume that obesity was adequately factored into [the ALJ's] decision at later stages of the inquiry." *Macaulay v. Astrue*, 262 F.R.D. 381, 389 (D. Vt. 2009). The Court concludes this is what occurred in this case. The Court interprets the ALJ's finding that Plaintiff's obesity had no affect on her function to mean the obesity did not cause limitations *beyond* those factored into the RFC assessment. This is supported by the objective medical evidence, which includes no limitations on Plaintiff's ability to perform work-related functions (beyond the RFC assessment) imposed by any doctors *because of obesity*. *McNamara v. Astrue*, 590 F.3d 607, 611 (8th Cir. 2010) (rejecting contention ALJ erred in failing to discuss obesity as potential work-related limitation in part because no physician imposed limitations because of obesity).

Lastly, Plaintiff argues the ALJ's credibility determination was not supported by substantial evidence. Plaintiff concedes the record "may not contain sufficient objective medical evidence to support the Plaintiff's subjective complaints," but argues "a more searching analysis of the record *as a whole* does support them"; however, Plaintiff's "more searching analysis" cites solely her subjective complaints and testimony.

An ALJ "'may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence.'" *Jones v. Astrue*, 619 F.3d 963, 975 (8th Cir. 2010) (citation omitted). The ALJ found Plaintiff's reports of severe arthritis pain and need to elevate swollen legs not credible because they were not corroborated by the objective medical evidence and because Plaintiff "[was] able to perform all normal activities of daily living." This credibility determination is valid to the extent it relies on something more than the lack of medical records supporting Plaintiff's complaints, *see id.*; however, the finding Plaintiff could perform "all normal activities of

daily living" completely glosses over Plaintiff's testimony some of her daily activities were limited by fatigue, shortness of breath, and/or pain. And, as Plaintiff notes, the ALJ failed to account for her complaints of fatigue and shortness of breath and failed to discuss other credibility factors, including the effects of her medications.

Nevertheless, the Court concludes any error in the ALJ's credibility determination was harmless. An ALJ is not required to discuss every credibility factor. *Id.* Although some of Plaintiffs activities were limited, she testified she could do laundry, cook, make the bed, shop for up to 30 minutes at a time (only needing to rest on occasion), and drive. The only reported side effect from Plaintiff's medications was excessive perspiration. Plaintiff's reports of fatigue and shortness of breath were not frequent, she denied activity intolerance in February 2008, and not even Dr. Sollars imposed restrictions on Plaintiff due to her reported fatigue and shortness of breath. Her routine stress studies were normal. Plaintiff only stopped working because her company closed, she looked for work while receiving unemployment compensation, and she later sold insurance after studying for and passing an insurance license exam. As the Court noted earlier, Plaintiff is not taking strong pain medication. And Plaintiff "continue[d] to be sedentary" and failed to follow Dr. Berenbom's advice in November 2006 to diet, exercise, and lose weight. *See Kisling v. Chater*, 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment may be grounds for denying an application for benefits). Under these circumstances, reversal and remand is not required.

### III. CONCLUSION

The Commissioner's decision is affirmed.
IT IS SO ORDERED.

                                                            /s/ <u>Ortrie D. Smith</u>
                                                            ORTRIE D. SMITH, SENIOR JUDGE
DATE: June 21, 2011                             UNITED STATES DISTRICT COURT